**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| In re:<br><br>WARDMAN HOTEL OWNER, L.L.C.,<br><br>         Debtor. | Chapter 11<br><br>Case No. 21-10023 (JTD)<br><br>Pending in the United States<br>Bankruptcy Court for the<br>District of Delaware |
| MARRIOTT HOTEL SERVICES, INC.<br>10400 Fernwood Road<br>Bethesda, MD 20817<br><br>Plaintiff<br><br>v.<br><br>WARDMAN HOTEL OWNER, L.L.C.<br>4747 Bethesda Avenue, Suite 200<br>Bethesda, MD 20814<br><br>PACIFIC LIFE INSURANCE COMPANY<br>700 Newport Center Drive<br>Newport Beach, CA 92660<br><br>Defendants. | Adversary No.: 21-00043 |

**MOTION TO TRANSFER VENUE OF REMOVED CASE TO THE**
**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**
**WHERE THE RELATED CHAPTER 11 BANKRUPTCY CASE OF**
<u>**DEFENDANT WARDMAN HOTEL OWNER, L.L.C. IS PENDING**</u>

Pursuant to 28 U.S.C. §§ 1404(a), 1412 and Rule 7087 of the Federal Rules of Bankruptcy

Procedure, Defendant, Pacific Life Insurance Company, a Nebraska corporation ("**Pacific Life**")

hereby moves to transfer the above-captioned adversary proceeding (the "**Adversary**

**Proceeding**"), and all claims and causes of action removed to this court through Pacific Life's Notice of Removal ("**Notice of Removal**") (ECF No. 1) of Civil Action No. 483406-V from the Circuit Court for Montgomery County, Maryland (the "**State Court Action**" or the "**Removed State Court Action**"), to the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**"),[1] where Defendant Wardman Hotel Owner L.L.C., a Delaware limited liability company ("**Hotel Owner**" or the "**Debtor**") is a debtor in a pending Chapter 11 case (the "**Chapter 11 Case**").[2]

## SUMMARY OF THE ARGUMENT

1.      This Court should transfer venue of the Adversary Proceeding to the Delaware Bankruptcy Court because the factual and legal overlap of the claims in the Removed State Court Action and the matters that will proceed before the Delaware Bankruptcy Court in the Debtor's Chapter 11 Bankruptcy Case establish that the traditional factors that courts consider weigh in favor of transferring the Removed State Court Action to the Delaware Bankruptcy Court.

## BACKGROUND AND PROCEDURAL HISTORY

### A.  Pre-Bankruptcy Background

2.      The Debtor owns the Marriott Wardman Park Hotel (the "**Hotel**").  The Debtor is 100% owned by PL Wardman Member, LLC, ("**PL Member**"), a Delaware limited liability company, and an affiliate of Pacific Life.

---

[1]      When referring to items filed in the Chapter 11 Case, Pacific Life will use the term "Del. Bankr ECF No. ___".  When referring to items filed in this Adversary Proceeding, Pacific Life will use "ECF No. __".

[2]      Pacific Life incorporates by reference as if set forth fully herein all facts and exhibits set forth in the Notice of Removal.  Terms not otherwise defined herein shall have the meaning given to them in the Notice of Removal.

3.      Pacific Life is the Debtor's senior secured prepetition lender. Its relationship with the Hotel began in 2005 when Pacific Life provided a loan (the "**Original Pacific Life Loan**") to an entity owned by the JBG Companies and the CIM Group (collectively, the "**Original Hotel Owners**") to finance the Original Hotel Owners' acquisition of the Hotel.  After the Original Hotel Owners acquired the Hotel, the Hotel experienced several years of poor performance.

4.      As a result of the Hotel's poor performance, Pacific Life and the Original Hotel Owners entered into multiple modifications of the Original Pacific Life Loan.  After a sale process pursued by the Original Hotel Owners failed to result in a sale acceptable to the parties, Pacific Life and the Original Hotel Owners agreed to a deleveraging recapitalization (the "**Recapitalization**").

5.      Pursuant to the Recapitalization, Pacific Life and the Original Hotel Owners formed the Debtor.  In connection with its formation, Debtor purchased the Hotel from the Original Hotel Owners through, among other things, a new loan from Pacific Life (the "**New Pacific Life Loan**") and Pacific Life's agreement to extinguish a portion of the balance on the Original Pacific Life Loan in exchange for equity in the Debtor.  As part of the Recapitalization, the Original Hotel Owners and PL Member also contributed capital to the Debtor.[3]

6.      The Debtor and Marriott are parties to a long-term Hotel Management Agreement (the "**HMA**") governing Marriott's provision of services to the Debtor.

---

[3]      At the time of Debtor's bankruptcy filing, PL Member, an affiliate of Pacific Life, owned 100% of the interests of Debtor.

7.      In connection with the New Pacific Life Loan, Marriott and Pacific Life entered into a new Subordination, Non-Disturbance and Attornment Agreement dated as of January 19, 2018 (the "**SNDA**").[4]

### B.  Removed State Court Action

8.      On September 8, 2020, Plaintiff Marriott Hotel Services, Inc. ("**Marriott**") commenced the Removed State Court Action by filing a complaint (the "**Complaint**") against both the Debtor and Pacific Life seeking injunctive relief, declaratory relief, and damages (the "**Complaint**").

9.      In the Complaint, Marriott asserts causes of action for, among other things: (i) Breach of Contract against the Debtor for an alleged breach of the HMA; (ii) Tortious Interference with Contract against Pacific Life resulting from the Debtor's alleged breach of its obligation to fund working capital requested by Marriott; and (iii) Breach of Contract against Pacific Life arising from disputed obligations pursuant to the SNDA and HMA.[5]

10.     The Debtor filed its Counterclaims against Marriott on December 16, 2020.[6] Debtor's Counterclaim asserts claims against Marriott for, among other things: (i) Breach of Contract arising from Marriott's failure to fulfill its obligations under the HMA; (ii) Breach of the Covenant of Good Faith and Fair Dealing resulting from Marriott's invalid demands for working capital and abuse of discretion granted to it under the HMA; and (iii) Breach of Fiduciary Duty

---

[4]      In connection with the Original Pacific Life Loan, Marriott and Pacific Life entered into similar Subordination, Non-Disturbance and Attornment Agreements dated July 12, 2007, and August 22, 2007.

[5]      The Hotel ceased accepting hotel guests in March 2020 and was closed immediately prior to the Debtor's bankruptcy filing.

[6]      Pacific Life filed its answer denying all claims asserted against it on November 16, 2020.

arising from Marriott's intentional, knowing, and wrongful acts in promoting its own interests to the detriment of the Debtor.

11.    In connection with the State Court Action, Marriott requested and obtained a preliminary injunction against the Debtor compelling Debtor to pay Marriott's working capital demands.  Of note, relevant to the "related to" nature of the State Court Action, in responding to the Debtor's contentions that it lacked funds to meet Marriott's unsupported working capital demands, Marriott maintained that "[i]f the Owner does not have the funds to pay its bills, it could pursue a bankruptcy."  *Marriot v. Wardman Hotel Owner, L.L.C.*, Civil Action No. 483406-V, Circuit Court for Montgomery County, Maryland, *Reply Memorandum by Plaintiff Marriott Hotel Services, Inc. in Support of its Motion for a Preliminary Injunction and Other Appropriate Relief*, p. 2.  Similarly, during the hearing on Marriott's request for a preliminary injunction, Marriott's counsel asserted, not less than six times, that the Debtor could file for bankruptcy.  December 1, 2020 Maryland Hearing Transcript at 17:1-6; 265:20-25; 273:1-17; 275:19-22; December 2, 2020 Maryland Hearing Transcript at 82:2-7; 85:19-22.

### A.  Owner's Chapter 11 Bankruptcy

12.    On January 11, 2021 (the "**Petition Date**"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under Chapter 11 pursuant to Title 11 of the United States Code (the "**Bankruptcy Code**") in the Delaware Bankruptcy Court.  No trustee has been appointed, and the Debtor remains a debtor-in-possession.

13.    Although Marriott filed a motion seeking to transfer the Chapter 11 Case from the Delaware Bankruptcy Court to the Bankruptcy Court for the District of Columbia (the "**Marriott Venue Transfer Motion**") (Del. Bankr. ECF No. 59), the Delaware Bankruptcy Court denied the Marriott Venue Transfer Motion; concluding that "transferring venue is not necessary."  *See* February 10, 2021 Transcript of the Oral Ruling Denying Motion to Transfer Venue at p. 7;

February 11, 2021 Order Denying Motion to Transfer Venue (Del. Bankr. ECF No. 137).  Notably,

in support of the Marriot Venue Transfer Motion, Marriott acknowledged that claims set forth in

the State Court Action could "actually be litigated before Your Honor [the Delaware Bankruptcy

Court]" when responding to a question from the Delaware Bankruptcy Court.  *See* February 9,

2021 Delaware Bankruptcy Court Hearing Transcript, at 63:17-64:4; *see also* p. 17:15-19 ("The

Debtor cannot change the essential facts of this case. There's one primary asset which is real

property in Washington, D.C. and the primary issues involved is value and sale of that real estate,

and a dispute over a hotel management agreement governed by Washington, D.C. law.").

14.     On the Petition Date, the Debtor filed the *Debtor's Motion for Entry of an Order*

*Authorizing the Debtor to Reject the Hotel Management Agreement Effective as of the Petition*

*Date* (the "**Rejection Motion**").  (Del. Bankr. ECF No. 6).  The Delaware Bankruptcy Court

entered its Order Authorizing the Debtor to reject the HMA (the "**HMA Rejection Order**") (Del.

Bankr. ECF No. 127).[7]

15.     It is also noteworthy that, in the HMA Rejection Order, Marriott agreed that:

> Marriott must file claims against the Debtor in connection with the HMA or the
> rejection, breach or termination of the HMA in accordance with any claims bar date
> set by the Court, and the failure to file a timely claim shall forever prohibit Marriott
> from receiving any distribution on account of such claims from the Debtor's estate.
> For the avoidance of doubt, any claims Marriott may have against third parties,
> including non-debtor affiliates, for damages related to the termination of the HMA,
> are expressly preserved.

*See* HMA Rejection Order at ¶ 4.

16.     Further, on January 26, 2021, Marriott filed the *Motion for the Authority to Exercise*

*Rights of Recoupment, or, in the Alternative, Relief from the Automatic Stay to Exercise Rights to*

---

[7]     Marriott essentially did not oppose the Rejection Motion in its Limited Objection.  Marriott
instead requested that claims it might have against Pacific Life and the Debtor be preserved, and
that was provided for in the HMA Rejection Order.

*Setoff* (the "**Marriott Recoupment/Setoff Motion**") (Del. Bankr. ECF No. 62). Through the

Marriott Recoupment/Setoff Motion, Marriott is seeking authority from the Delaware Bankruptcy

Court to immediately and unilaterally exercise alleged recoupment or setoff rights to seize funds

on deposit in the Debtor's Furniture, Fixtures, and Equipment account (the "**FF&E Reserve**"),

which is property of the bankruptcy estate and specifically earmarked for capital improvements to

the Hotel.   After acknowledging the Delaware Bankruptcy Court's core jurisdiction over the

Marriott Recoupment/Setoff Motion, Marriott asserted that it has pre and postpetition claims

against the Debtor based on the same relief sought in the State Court Action. For example, Marriott

states:

> Marriott has not been paid the estimated $5.4 million that it advanced to operate
> and maintain the Hotel and pay the Hotel's employees and vendors. Marriott will
> now need to pay an additional $11 million of estimated severance costs to the
> Hotel's employees. **These damages arise directly from the Debtor's continued
> refusal to meet its obligations under the HMA and its closure of the Hotel**.

*See* Marriott Recoupment/Setoff Motion at ¶ 35 (emphasis added).

17.     The Hearing on the Marriott Recoupment/Setoff Motion has not been scheduled

based on Marriott's request that its motion be deferred to an evidentiary hearing in the Chapter

11 Case at a date to be determined by the Delaware Bankruptcy Court.

## JURISDICTION

18.     As set forth in the Notice of Removal, the claims asserted in the Removed State

Court Action constitute either core proceedings within the meaning of 28 U.S.C. § 157(b)(2) or

non-core proceedings that are "related to" the Chapter 11 Case within the meaning of 28 U.S.C. §

157(c)(1).[8]

19.     Regardless of whether the claims for relief asserted in the Removed State Court

---

[8]        *See* Notice of Removal.

Action are core or none-core, under 28 U.S.C. § 1452, this Court has core jurisdiction over motions to transfer adversary proceedings. *See DHP Holdings, II, Corp. v. The Home Depot, Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 264, 268, 273 (Bankr. D. Del. 2010) (holding that the court "has jurisdiction over this Motion to transfer venue, which is a core proceeding" while also concluding that "all of the counts in the complaint were non-core"); *Visteon Corp. v. Governor Bus. Sols. Inc. (In re Visteon Corp.)*, No. 09-11786 (CSS), 2011 WL 5025004, at *1 n.2 (Bankr. D. Del. Oct. 19 2011) ("This Court has jurisdiction over GBSI's motion to transfer venue, which is a core proceeding."); *In re Rehoboth Hospitality, LP*, No. 11-12798 KG, 2011 WL 5024267, at *1 (Bankr. D. Del. 2011) ("a venue motion is a core matter . . . we have the authority to determine discretionary transfer of venue motions despite the omission of the Bankruptcy Court from § 1412") (citation omitted).

20.     Pursuant to 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over the Removed State Court Action, which was removed pursuant to 28 U.S.C. §§ 157 and 1452, Federal Rule of Bankruptcy Procedure 9027.

## ARGUMENT

21.     Sections 1404 and 1412 of Title 28 of the United States Code address authority for this Court to transfer venue.

22.     Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Section 1412 permits this Court to transfer venue of a proceeding "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

23.     The analysis under sections 1404(a) and 1412 is "essentially the same, turning on the same issues of 'the interest of justice' and the 'convenience of the parties.'" *In re DHP Holdings II Corp*., 435 B.R. 264, 268 (Bankr. D. Del. 2010); *see also In re Thomson McKinnon Sec. Inc.*, 126 B.R. 833, 835 (Bankr. S.D.N.Y. 1991) ("The criteria under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1412 are the same."). The decision of whether venue should be transferred "lies within the sound discretion of the Court." *In re Hechinger Inv. Co. of Del.*, 296 B.R. 323, 325 (Bankr. D. Del. 2003).

24.     Here, the factual and legal overlap of the claims in the Removed State Court Action and the matters that will proceed in the Debtor's Chapter 11 Bankruptcy Case establish the basis for transferring venue of the Removed State Court Action to the Delaware Bankruptcy Court. The Fourth Circuit has adopted the Third Circuit's test for determining the existence of "related to" jurisdiction.

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*.  Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts the handing of the administration of the bankrupt estate.

*See Owens-Illinois, Inc. v. Rapid American Corp., Inc. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997) quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

25.     Specifically, that (i) Marriott consented to the entry of the HMA Rejection Order (Del. Bankr. ECF No. 127), which provides that "Marriott must file claims against the Debtor in connection with the HMA or the rejection, breach or termination of the HMA in accordance with any claims bar date set by the Court," (ii) the Debtor has asserted the Counterclaim against Marriott, and (iii) Marriott's claims against Pacific Life require consideration and resolution of the

exact same claims (e.g., Marriott's claim that the Debtor breached the HMA), all strongly support

the transfer of venue of the Removed State Court Action to the Delaware Bankruptcy Court.

26.     Courts have considered the following factors applicable to transfer of venue

motions brought under 28 U.S.C. §1404(a), including: (1) the plaintiff's choice of forum;

(2) defendant's preference; (3) whether the underlying claim arose elsewhere; (4) relative physical

and financial conditions of the parties; (5) convenience of witnesses; (6) location of books and

records; (7) enforceability of any judgment obtained; (8) practical considerations tending to make

trial expeditious or inexpensive; (9) administrative difficulty arising from court congestion;

(10) local interest in the controversy; (11) public policies in each forum; and (12) the trial court's

familiarity with applicable law. *See, e.g., CapitalSource Fin. LLC v. B&B Contrs., Inc.*, 2005 U.S.

Dist. LEXIS 7698, at \*26 (D. Md. April 28, 2005); *see also Al's Family Automotive v. Bennett*,

No. 11-6237, 2012 U.S. Dist. LEXIS 9353, 2012 WL 246226, at \*1 (E.D. Pa. Jan. 25, 2012); *In

re DHP Holdings II Corp.*, 435 B.R. 264, 273 (Bankr. D. Del. 2010). Collectively, the factors

weigh in favor of transferring the Removed State Court Action to the Delaware Bankruptcy Court.

I.      **Proceeding in the Delaware Bankruptcy Court Is in the Best Interest of the
        Debtor and All Creditors.**

27.     When a civil case is related to a bankruptcy proceeding in another venue, a

presumption exists that the case should be litigated in the district where the bankruptcy was filed.

*Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 678 (S.D.W. Va. 2005) quoting *Blanton v. IMN Fin.

Corp.*, 260 B.R. 257, 267 (M.D.N.C. 2001) ("The home court presumption provides that a court

in which the bankruptcy case itself is pending is the proper venue for adjudicating all related

litigation, including those suits which have been filed in other state or federal courts."); *see also

Waleski v. Montgomery McCrackren, Walker & Rhoads, LLP*, 2018 U.S. Dist. LEXIS 208727,

\*12 (Bankr. M. D. Pa. Dec. 10, 2018) (citing *Dearden v. FCA US LLC*, 2017 U.S. Dist. LEXIS

48751, 2017 WL 119080, at \*4 (E.D. Pa. Mar. 31, 2017) (transferring case to district where bankruptcy was pending, noting that "it is presumed that when a case is related to a bankruptcy proceeding, the district where the bankruptcy is pending is generally the appropriate venue") (citations omitted).

28.     Transferring venue of the Removed State Court Action to the Delaware Bankruptcy Court will benefit all parties because it will ensure the most efficient administration of the Debtor's bankruptcy estate and avoid duplication of effort and potentially inconsistent determinations. Simply, because the Delaware Bankruptcy Court will need to resolve the exact same claims asserted in the Removed State Court Action in the course of the Chapter 11 Case, transferring venue of the Removed State Court Action is the only means through which the asserted claims can be resolved in one forum and without duplication.

29.     Further, it is noteworthy that Marriott invited the Debtor's Chapter 11 Bankruptcy Case.  Specifically, Marriott first told the Maryland State Court that "[i]f the Owner does not have the funds to pay its bills, it could pursue a bankruptcy."  Removed State Court Action, *Reply Memorandum by Plaintiff Marriott Hotel Services, Inc. in Support of its Motion for a Preliminary Injunction and Other Appropriate Relief*, p. 2.  Second, during the hearing on Marriott's request for a preliminary injunction in the Removed State Court Action, Marriott's counsel asserted, not less than six times, that the Debtor could file for bankruptcy.  Removed State Court Action, December 1, 2020 Maryland Hearing Transcript at 17:1-6; 265:20-25; 273:1-17; 275:19-22; December 2, 2020 Maryland Hearing Transcript at 82:2-7; 85:19-22.  Accordingly, because Marriott knowingly advocated the Debtor's bankruptcy filing, thereby creating the current situation wherein all claims asserted against the Debtor in the Removed State Court Action are

11

stayed and will be resolved in the Debtor's Chapter 11 Case, resolution of all claims should

proceed in the Delaware Bankruptcy Court.

## II.   All Remaining Factors Favor Transferring Venue to the Delaware Bankruptcy Court.

### A.   Familiarity with Applicable Law, Public Policy, the Delaware Bankruptcy Court's Core Interest in Claims Resolution, and Its Ability to Ensure Judicial Efficiency in the Administration of Justice.

30.   The Delaware Bankruptcy Court has a significant interest in the Removed State

Court Action as it implicates the administration of the Debtor's bankruptcy estate.  First, pursuant

to the HMA Rejection Order, the claims asserted by Marriott in the Removed State Court Action,

and any and all claims related to the rejection of the HMA, have to be resolved in the claims

allowance process in the Delaware Bankruptcy Court.  Second, because Marriott has filed the

Marriott Recoupment/Setoff Motion in the Delaware Bankruptcy Court—seeking authority to

setoff and recoup amounts purportedly owing under the HMA against the Debtor's property

(amounts on deposit in a reserve account)—the issues in the Removed State Court Action are,

again, directly raised in the Chapter 11 Case.[9] Third, the claims Marriott asserts against Pacific

Life are based on the HMA and the Debtor's purported breach thereof.

31.   To amplify, with regard to Marriott's claims against Pacific Life (*i.e.*, that Pacific

Life caused the Debtor to breach its obligations under the HMA), Marriott must first prove that

---

[9]      After acknowledging the Delaware Bankruptcy Court's core jurisdiction over the Marriott Recoupment/Setoff Motion, Marriott asserted that it has pre and postpetition claims against the Debtor  based on the same relief sought in the State Court Action. For example, Marriott states:

> Marriott has not been paid the estimated $5.4 million that it advanced to operate and maintain the Hotel and pay the Hotel's employees and vendors. Marriott will now need to pay an additional $11 million of estimated severance costs to the Hotel's employees. These damages arise directly from the Debtor's continued refusal to meet its obligations under the HMA and its closure of the Hotel.

*See* Marriott Recoupment/Setoff Motion at ¶ 35 (emphasis added).

(i) the Debtor breached its obligations under the HMA; (ii) Marriott did not breach its obligations under the HMA; and (iii) Marriott is entitled to damages. Unless decided by the Delaware Bankruptcy Court, in a consolidated proceeding, these questions would be subject to potential inconsistent determinations and would impose a significant burden and distraction on the Debtor. *See Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) ("In light of the identity of interest between Calpine and Fireman's, Calpine will suffer irreparable harm if the Nevada Litigation continues through the risk of collateral estoppel and evidentiary prejudice, a drain on its estate due to its indemnification obligations to Fireman's and a significant burden and distraction of key employees from its restructuring efforts."); *see also Cipollone v. Applestein (In re Va. True Corp.)*, 2020 Bankr. LEXIS 826 (Bankr. E.D. Va. March 30, 2020) (Transferring removed action to bankruptcy court in New York was warranted because removed action was "related to" that bankruptcy case and transferring action would promote economic administration of debtor's bankruptcy estate, judicial economy, and avoid inconsistent rulings).

32.     Though not binding on this Court, it is noteworthy that the Delaware Bankruptcy Court has already made determinations concerning certain of the traditional "venue transfer" elements; concluding that "Marriott did not point out any particular issues of D.C. law that might be unsettled or matters of first impression that might make it difficult for this Court to decide contractual matters, **if and when they do arise**." *See* Chapter 11 Case, February 10, 2021 Hearing Transcript 9:6-14 (addressing Marriott's administrative concerns over court congestion and denying the Marriott Transfer Venue Motion).

33.     While the Delaware Bankruptcy Court's interest in providing centralized administration of factually and legally related and interdependent claims in the Removed State

Court Action is evident, Marriott's arguments to date do not support proceeding in Maryland. *See* Marriott Transfer Venue Motion, at ¶ 27 ("Marriott's claims against Debtor arising from Debtor's breach of its hotel management contract with Marriott . . . clearly arose in the District of Columbia, where the Hotel is located, the contract was breached, and where the Debtor's manager purportedly terminated the contract.")

34.     Thus, as the claims presented in the Removed State Court Action arose outside of Maryland and are based on D.C. law, the factors of familiarity with applicable law, public policy, the Delaware Bankruptcy Court's core interest in claims resolution, and its ability to ensure judicial efficiency in the administration of justice, all weigh in favor transferring venue of the Removed State Court Action to the Delaware Bankruptcy Court.[10]

> **B.     Efficient Administration of the Bankruptcy Estate, Convenience of Witnesses, Books and Records, and Practical Considerations Favor Transferring Venue.**

35.     The remaining factors concern judicial economy and further illuminate the Delaware Bankruptcy Court's predominant interest in this matter.

36.     Economic and efficient administration of the bankruptcy estate is the most important factor when considering a motion to transfer venue. *See Barnes v. Moffatt*, 2006 U.S. Dist. LEXIS 78206, \*4 (S.D.W. Va. Oct. 25, 2006); *see also In re Commonwealth Oil Refin. Co., Inc.,* 596 F.2d 1239, 1247 (5th Cir. 1979); *In re Caesars Entertainment Operating Co.,* 2015 Bankr. LEXIS 314, at \*22 (Bankr. D. Del. Feb. 2, 2015); *In re Industrial Pollution Control, Inc.,* 137 B.R. 176, 182 (Bankr. W.D. Pa. 1992).

---

[10]     Similarly, because Marriott did not file its action in this Court, Marriott's choice of forum is not relevant to whether to transfer venue.

37.    Transferring the Removed State Court Action to the Delaware Bankruptcy Court benefits the physical and financial conditions of all parties.  Consolidating litigation expenses provides for efficiency and will help facilitate the maximum recovery to the Debtor's bankruptcy estate.

38.    What's more, transferring the Removed State Court Action will not prejudice witnesses or make the books and records inaccessible. As the Delaware Bankruptcy Court plainly reasoned in denying Marriott's Venue Transfer Motion:

> Marriott speculates there may be witnesses outside the subpoena power of this court, however, Marriott has not identified any witnesses that would be otherwise unavailable for a hearing, either in person or through deposition.  Moreover, considering Marriott's relative physical and financial condition, as the Third Circuit put it, it has failed to show any inconvenience to itself.

*See* February 10, 2021 Hearing Transcript 10:11-11:2.

39.    The Delaware Bankruptcy Court further explained that for the foreseeable future, hearings will be held remotely on Zoom and that "Marriott failed to establish that any persons that might want to appear and testify would be any closer to D.C. than Delaware or refuse to appear, either voluntarily or by subpoena, if needed in [the Delaware Bankruptcy Court]." *Id*. at 10:11-17. Indeed, considering the Delaware Bankruptcy Court's willingness to accommodate witnesses and potential claimants, Marriott cannot establish that any potential witnesses brought in the Removed State Court Action would be unable to appear in the Chapter 11 Case.

40.    Finally, the location of Defendants' books and records does not weigh in favor of proceeding in Maryland. As the Delaware Bankruptcy Court explained, "the Debtor's records have been removed from D.C. and many of them are now in Atlanta, Georgia.  Moreover, Marriott did not present any evidence that access to the records would make D.C. a more convenient forum than Delaware." *Id*. at 9:23-25.

15

41. Pacific Life's books and records as well as its business persons are located in California. Marriott's business records are assumed to be located in Maryland. Thus, the efficiency factors noting the Delaware Bankruptcy Court's overriding interest in the resolution of the claims by and against Marriott weigh in favor of transferring the Removed State Court Action to Delaware.

## CONCLUSION

For the reasons set forth above, Pacific Life respectfully requests that this Court enter an order transferring this adversary proceeding to the Delaware Bankruptcy Court and grant such other and further relief as the Court deems appropriate.

Dated: February 18, 2021

PACIFIC LIFE INSURANCE COMPANY

By: /s/ Brian D. Frey
    Brian D. Frey (D. Md. #: 17592)

ALSTON & BIRD LLP
Brian D. Frey
CPF No. 0712110268
The Atlantic Building 950 F Street, NW
Washington, DC 20004-1404
Tel 404-239-3067
Fax 404-239-3033
brian.frey@alston.com

-and-

David A. Wender (*pro hac vice pending*)
Grant T. Stein (*pro hac vice pending*)
1201 West Peachtree Street
Atlanta, Georgia, 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Counsel to Pacific Life Insurance Company*