**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| In re:<br><br>WARDMAN HOTEL OWNER, L.L.C.,<br><br>                         Debtor. | Chapter 11 Case<br><br>Case No. 21-10023 (JTD)<br><br>Pending in the United States Bankruptcy Court for the District of Delaware |
| MARRIOTT HOTEL SERVICES, INC.<br>10400 Fernwood Road<br>Bethesda, Maryland 20817<br><br>                      Plaintiff,<br><br>-against-<br><br>WARDMAN HOTEL OWNER, L.L.C.<br>4747 Bethesda Avenue, Suite 200<br>Bethesda, Maryland 20814<br><br>PACIFIC LIFE INSURANCE COMPANY<br>700 Newport Center Drive<br>Newport Beach, California 92660<br><br>                    Defendants. | Adv. Pro. No. 21-00043 |

**MARRIOTT HOTEL SERVICES, INC.'S MOTION FOR MANDATORY ABSTENTION FROM HEARING AND REMAND OF CLAIMS AGAINST PACIFIC LIFE INSURANCE COMPANY PURSUANT TO 28 U.S.C. § 1334(c)(2) OR, IN THE ALTERNATIVE, PERMISSIVE ABSTENTION AND REMAND PURSUANT TO 28 U.S.C. §§ 1334(c)(1) AND 1452(b)**

Marriott Hotel Services, Inc. ("Marriott"), by and through its undersigned counsel, submits this motion (the "Motion") for (i) mandatory abstention from hearing and remand of Marriott's claims (the "Pacific Life Claims") against Pacific Life Insurance Company ("Pacific Life") commenced in Civil Action No. 483406-V in the Circuit Court for Montgomery County, Maryland (the "Maryland State Court") on September 8, 2020 (the "State Court Action") pursuant to 28

U.S.C. § 1334(c)(2), or in the alternative, (ii) permissive abstention and remand of the Pacific Life

Claims to the Maryland State Court pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b).  In support

of this Motion, Marriott respectfully represents as follows:[1]

## PRELIMINARY STATEMENT

1.       Marriott brought claims against two separate parties in Maryland State Court:  the

Debtor and Pacific Life.  Marriott's claims against the Debtor arise solely under their Hotel

Management Agreement, which has since been rejected in the Delaware Bankruptcy Court.  The

Pacific Life Claims arise primarily under a separate Subordination & Non-Disturbance Agreement

(as defined herein) between Marriott and Pacific Life.  While claims by or against the Debtor will

now appropriately be resolved in the Debtor's bankruptcy case in Delaware, the Pacific Life

Claims are inappropriate for resolution in that court.  Those claims should be remanded back to

Maryland State Court.

2.       Pacific Life filed its Notice of Removal because it does not want Marriott's claims

against it to be resolved in Maryland State Court.  It thus seeks to manipulate and misuse

bankruptcy jurisdiction in search of what it believes will be a more favorable forum.

3.       Pacific Life's belief that Delaware is more favorable derives from events preceding

the Debtor's bankruptcy filing.  Specifically, Marriott sued both the Debtor and Pacific Life in

Maryland State Court.  After holding a two-day evidentiary hearing, the Maryland State Court

issued preliminary injunctive relief for Marriott, finding in two written opinions that Marriott was

suffering irreparable harm from the Debtor's breach of contract.  After seeing the Maryland State

---

[1] On March 18, 2021, the Maryland Bankruptcy Court entered the Transfer Order (as defined herein) to transfer the State Court Action to the Delaware Bankruptcy Court.  As of the date of the filing of this Motion, the transfer has not occurred.  Marriott has filed this Motion in the Maryland Bankruptcy Court in order to prevent arguments as to the timeliness of this Motion if Marriott waits until the matter is officially transferred to the Delaware Bankruptcy Court. As such, Marriott cites to applicable Third Circuit case law governing the standards for relief set forth in this Motion.

Court recognize how Marriott has been harmed, Pacific Life is now improperly attempting to obtain what it deems a more favorable forum in the Delaware Bankruptcy Court.

4.      Pacific Life's removal and transfer motion are particularly abusive because they come after Pacific Life opposed transfer of the Bankruptcy Case to the District of Columbia.  *See* Pacific Life's Joinder to Debtor's Objection to Motion to Transfer Venue, p. 2 Del. Bankr. Court ECF No. 83.  Pacific Life and the Debtor opposed transfer in part by arguing that there were no witnesses or evidence from the State Court Action that would need to be litigated in the Delaware Bankruptcy Court—an argument the Delaware Bankruptcy Court credited and accepted in rejecting transfer.  *See* Transcript, Feb. 9, 2021 Hearing, 44:7-19 annexed hereto as Exhibit B. Now, after successfully keeping the Bankruptcy Case in Delaware, Pacific Life seeks to move the Maryland State Court case there too.  This Court should, and indeed *must*, reject this blatant effort at forum shopping by sending the Pacific Life Claims back to the Maryland State Court.

5.      As set forth in this Motion, the Pacific Life Claims meet the standards for both mandatory abstention and remand under 28 U.S.C. § 1334(c)(2) and permissive abstention and remand under 28 U.S.C. §§ 1334(c)(1) and 1452(b).  Abstention and remand are appropriate here because the Pacific Life Claims belong in the Maryland State Court.  They do not "arise in" nor "arise under" the Bankruptcy Code, they are based solely in state law, and do not involve any issues of bankruptcy law.  Further, the Maryland State Court has superior knowledge and expertise of both the factual record, as well as the appropriate legal standard that will be applied to such record.

6.      Moreover, this Court does not have the authority to conduct a jury trial for the Pacific Life Claims, and the District Court does not have the requisite knowledge of the facts of the State Court Action to efficiently adjudicate the Pacific Life Claims.  The Maryland State Court,

on the other hand, has the authority to conduct a jury trial for the Pacific Life Claims, has already heard the factual record of this case, and has already issued two written opinions.  The Maryland State Court, therefore, is the far superior forum to adjudicate the Pacific Life Claims, and judicial resources will be more efficiently used by remanding the Pacific Life Claims to the Maryland State Court, where the Pacific Life Claims can be quickly adjudicated.

7.      Marriott does not seek abstention from, or remand of, all of the claims at issue in the State Court Action - only the Pacific Life Claims.  The claims by the Debtor against Marriott and Marriott's claims against the Debtor would be adjudicated by the Delaware Bankruptcy Court. The abstention and remand of the Pacific Life Claims will not delay the administration of the Debtor's bankruptcy case.

8.      Accordingly, and as set forth in greater detail below, Marriott respectfully requests the Court to abstain from hearing the Pacific Life Claims and to remand such claims to the Maryland State Court.

## BASES FOR RELIEF

9.      The legal bases for the relief requested herein are 28 U.S.C. § 1334(c), 28 U.S.C. § 1452(b), and Rule 9027(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A.      Marriott's Management of the Property and the Hotel Management Agreement

10.     The Hotel Management Agreement between Marriott and Wardman Hotel Owner, L.L.C. (the "Debtor"), dated as of July 1, 2005 (the "HMA") provides for Marriott to manage the Hotel for an initial term running to December 28, 2029, with automatic renewals for three additional ten-year terms unless Marriott elects not to renew.  HMA §§ 1.01, 2.01, which is

annexed hereto as <u>Exhibit C</u>.   Under the HMA, Marriott has discretion and control over the management of the Hotel, including its employees, finances, and sales and marketing.   Marriott receives a fee in exchange for its performance, which is set as a percentage of revenue.   HMA §§ 1.02, 3.01.

11.     The HMA states that Marriott "shall not be obligated to incur any liability or obligation with respect to the Hotel" and "shall not be required to make any advance or payment with respect to the Hotel" from its own funds.   HMA § 4.03(B). "Debts and liabilities" incurred by Marriott from operating and managing the Hotel "will be paid by Owner," if the Hotel's gross revenues do not cover them.   HMA § 4.03(C).   The obligations of the Debtor under HMA § 4.03(C) expressly survive termination.   *Id.*   Likewise, when the Hotel's revenues are not sufficient to cover its costs, the Debtor is obligated to contribute "Working Capital," HMA § 4.05, which is defined as funds "used in the day-to-day operation of the business of the Hotel."   The HMA can be terminated only in response to an "Event of Default," and only after thirty days-notice or seventy-five days if the defaulting party is the manager.   HMA § 9.02.

**B.     The Debtor Breached Its Obligations Under the Hotel Management Agreement and Caused Harm to Marriott**

12.     Due to the COVID-19 pandemic, the Hotel was temporarily closed at the Debtor's request on March 27, 2020.   Although the Hotel was temporarily closed, Marriott required funds to pay for a considerable number of significant, but essential, expenses, the most substantial of which were salary and benefits for the Hotel's employees.   Even with the Hotel temporarily closed, some employees were needed at the Hotel.   Such essential employees included building security, engineering personnel, accounting personnel, and sales and marketing employees.   *See* Bowen Decl. ¶ 4, Del. Bankr. Court ECF No. 63.

13.     Other employees—in fact, the vast majority of the Hotel's workforce—were furloughed, but remained entitled to certain benefits under their collective bargaining agreement or Marriott's severance plan.  Plus, terminating rather than furloughing those employees would have triggered expensive severance obligations and significantly delayed the Hotel's ability to reopen. *Id.* ¶ 5.

14.     Marriott also needed working capital to pay Hotel vendors.  Some funds were needed to pay vendor bills that accrued before the Hotel closed. Other funds were required to pay vendors for services that remained crucial during closure, such as the costs for utilities, chemicals to treat the Hotel's water systems, services to maintain and repair the Hotel's elevators, and other costs related to repairs, security, and the maintenance of the systems used to operate the Hotel and to prepare for its reopening.  *Id.* ¶ 6.

15.     As the Maryland Circuit Court found, it was the Debtor's obligation to advance Working Capital at Marriott's request.  However, when Marriott requested that the Debtor due so, the Debtor "repeatedly . . . failed to comply with this promise."  *See* December 3, 2020 Maryland Circuit Court Order, at 16 (the "12/3/20 Opinion"), annexed hereto as Exhibit D.

16.     The Debtor's decision to starve the Hotel of capital and increasingly incur unpaid bills has caused and continues to cause Marriott significant harm.  Among other things, rather than letting employees go without pay, by November 2020, Marriott had advanced more than $5.5 million of its own money to cover costs that are the sole obligation of the Debtor, including in large part employee-related costs.  *See* 12/3/20 Opinion at 16-19.  This money was advanced solely to cover the Debtor's costs and to benefit the Debtor's Hotel.  *See* Bowen Decl. ¶ 7.

**C.      Marriott Sued the Debtor and Pacific Life as Lender in Maryland**

17.      On September 8, 2020, Marriott filed suit against the Debtor and Pacific Life, the Debtor's senior secured lender in the Maryland State Court.  The complaint (the "Complaint") asserted that the Debtor's refusal to fund Working Capital breached the HMA.  Marriott also brought the claims for breach of contract and tortious interference with a contract against Pacific Life, based on its encouragement of the Debtor to breach its duty to fund Marriott's Working Capital requests and based on the conflict of interest shared by Pacific Life in acting as both lender and owner.  *See id.* ¶ 8.

18.      Marriott alleged that Pacific Life, as lender, was attempting to force Marriott to walk away from the HMA because Pacific Life did not want to honor its obligations under its own Subordination, Non-Disturbance and Attornment Agreement (the "SNDA") with Marriott.  If Pacific Life could get Marriott to walk away from the HMA, Pacific Life would no longer need to honor its SNDA, which obligated it not to disturb Marriott's rights under the HMA and to ensure that if the Hotel were sold, that a subsequent owner would honor those rights as well.  *See id.* ¶ 9.

19.      Marriott sought a preliminary injunction against the Debtor seeking specific performance of the Debtor's obligation to provide working capital at levels determined by Marriott to be reasonably necessary.  On December 3, 2020, following a two-day evidentiary hearing where witnesses and other evidence were presented, Judge Rubin granted Marriott's motion for preliminary injunction and required the Debtor to specifically perform its obligation to fund Working Capital under the HMA.  *See* 12/3/20 Opinion at 2, 20.

20.      In granting Marriott's motion, Judge Rubin found that the HMA unambiguously gave Marriott discretion to request Working Capital that Marriott deemed reasonably necessary for the operation of the Hotel.  *See id*. at 17-18.  He determined that the Debtor's breach of its

obligations was causing Marriott irreparable harm in the form of damage to its relationships with

employees, vendors and guests. *See id*. at 18. After observing that both parties to the HMA were

sophisticated entities, he ruled that the public interest supported enforcement of the contract as

written and granted Marriott's motion. *See id.* at 20.

21. The Debtor sought emergency stays both from the trial and appellate courts. Both

denied the Debtor's requests. In denying the stay, Judge Rubin found:

> Debtor contractually agreed to fund working capital calls. The court's preliminary injunction simply requires Debtor to fulfill its express promise. Other than that the Debtor would prefer simply to breach the contract and litigate, no cogent reason has been advanced as to why a sophisticated party should not be held to its bargain. The record is clear that Debtor can finance its obligations when it chooses to do so. In this case, the court finds, it simply prefers not to do so.

*See* December 22, 2020 Maryland Circuit Court Order, at 2-3, annexed hereto as <u>Exhibit E</u>.

22. Judge Rubin also found that Marriott—and not the Debtor—would suffer

irreparable harm if the stay were granted. As Judge Rubin explained:

> Debtor's refusal to fund working capital calls has forced Marriott to issue WARN notices to hotel employees and to pay more than $5.5 million in hotel operating expenses out-of-pocket. Guests query Marriott, not Debtor, about deposits and contracts for future events. Vendors are going unpaid, causing them unnecessary hardship. As the court found when it issued the preliminary injunction, Marriott is suffering substantial reputational harm, among employees, customers, and vendors, because of Debtor's contractual breach.

*Id*. at p.3. Specific performance, Judge Rubin explained, was necessary because "[t]here is no

question in the court's mind that an award of money damages in this case, which the preliminary

injunction is not, would be manifestly under-compensatory given the reputational harm the court

finds to exist." *Id*. On November 13, 2020, Pacific Life filed an Answer to Marriott's Complaint.

On November 16, 2020, the Debtor filed an Answer to Marriott's Complaint. On December 16,

2020, the Debtor filed a counter-claim to Marriott's Complaint in the Maryland State Court alleging breach of contract, breach of covenant of good faith and fair dealing, and breach of fiduciary duty.

**D.      The Debtor's Bankruptcy Filing and the Motion to Reject the HMA**

23.      On January 11, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").   Del. Bankr. Court ECF No. 1. Immediately before the chapter 11 bankruptcy petition was filed, the Debtor served a termination notice on Marriott and almost simultaneously appeared at the property with armed security guards to attempt a hostile takeover of the Hotel.  The Debtor's termination notice purported to terminate the HMA based on a Notice of Default that the Debtor served more than six months ago, on June 11, 2020, and purported to do so immediately.  *See* Bowen Decl. ¶ 10.

24.      On the Petition Date, the Debtor filed a motion to reject the HMA (the "Rejection Motion").  Del. Bankr. Court ECF No. 6.

25.      On February 9, 2021, the Delaware Bankruptcy Court entered an order (the "Rejection Order") authorizing the Debtor to reject the HMA effective as of the Petition Date. Del. Bankr. Court ECF No. 127.

26.      On February 18, 2021, Pacific Life filed a notice of removal (the "Notice of Removal") removing the State Court Action to the United States Bankruptcy Court for the District of  Maryland (the "Maryland Bankruptcy Court").  Md. Bankr. Court ECF No. 2.

27.      Also on February 18, 2021, Pacific Life filed a motion to transfer (the "Motion to Transfer") the action to the Delaware Bankruptcy Court.  Md. Bankr. Court ECF No. 3.

28.     On March 3, 2021, Marriott filed its statement pursuant to Bankruptcy Rule 9027(e)(3) (the "Rule 9027(e)(3) Statement"), which indicated that Marriott does not consent to the entry of final orders or judgments by this Court.   Md. Bankr. Court ECF No. 21.

29.     On March 18, 2021, the Maryland Bankruptcy Court entered that certain *Consent Order Granting Motion to Transfer Venue of Removed Case to the United States Bankruptcy Court for the District of Delaware Where the Chapter 11 Bankruptcy Case of Defendant Wardman Hotel Owner, L.L.C. is Pending* (the "Transfer Order").  Md. Bankr. Court ECF No. 33.  Pursuant to the Transfer Order, Marriott, Pacific Life, and the Debtor agreed that the entry of the Transfer Order in the Maryland Bankruptcy Court:

> [S]hall not constitute a finding of fact or conclusion of law as to the validity of jurisdiction of the State Court Action in the Delaware Bankruptcy Court. Nothing in this [Transfer] Order shall restrict, impair, or otherwise affect any right of Marriott to seek remand and/or abstention of the State Court Action by the Delaware Bankruptcy Court or constitute a waiver of any of Marriott's rights or defenses.

*See* Transfer Order p. 2.

## RELIEF REQUESTED

30.     By this Motion, Marriott respectfully requests entry of an order, substantially in the form annexed hereto as Exhibit A, for: (i) mandatory abstention from hearing and remand of the Pacific Life Claims to the Maryland State Court under 28 U.S.C. § 1334(c)(2); or (ii) permissive abstention and remand of the Pacific Life Claims to the Maryland State Court pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b).

## ARGUMENT

31.     In bankruptcy proceedings, there are two statutory bases for abstention: (i) mandatory abstention under 28 U.S.C. § 1334(c)(2); and (ii) permissive abstention pursuant to 28

U.S.C. § 1334(c)(1).  Once a court determines to abstain from adjudicating a matter, the matter

must be remanded.  *See, e.g. Laddusire v. Auto–Owners Ins. Co., et al. (In re Laddusire)*, 541 B.R.

697, 706 (Bankr. W.D. Wis. 2015) ("Abstention without remand would place the parties in an

awkward limbo, with the state court prevented from proceeding in light of the notice of removal,

and this Court choosing to abstain. Thus, while remand can occur without abstention, an abstention

without a remand in this circumstance would leave the suit homeless"). As set forth below,

abstention and remand of the Pacific Life Claims meets the standards used by courts in the Third

Circuit for both mandatory and permission abstention.

32.     In the context of a multiple-count adversary proceeding, courts in the Third Circuit

conduct a "claim-by-claim" analysis of each of the specific claims at issue to determine whether a

bankruptcy court has jurisdiction over each  claim.  *See In re Exide Techs.,* 544 F.3d 196, 206 (3d

Cir. 2008) ("Each claim within the same cause of action must be analyzed claim by claim"); *Halper*

*v. Halper*, 164 F.3d 830, 838 (3d Cir.1999) ("Several courts have employed a claim by claim

analysis to determine the extent of a Bankruptcy Court's jurisdiction"); *In re Maxus Energy Corp.*,

597 B.R. 235, 243 (Bankr. D. Del. 2019) ("When determining whether an action is core, the Third

Circuit has adopted a claim by claim approach and scrutinizes each count individually, rather than

the proceeding as a whole").  Accordingly, using the "claim-by-claim" analysis, this Court can

bifurcate the claims, such that the Pacific Life Claims are remanded to the Maryland State Court

while the claims by and against the Debtor are retained and adjudicated in the bankruptcy process.

**A.**     **Abstention Is Mandatory Under 28 U.S.C. § 1334(c)(2) Relating to the Pacific Life**
        **Claims**

33.     Section 1334(c)(2) requires that this Court abstain from adjudicating the Pacific

Life Claims.  Section 1334(c)(2) provides for mandatory abstention when:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  Under section 1334(c)(2), a motion seeking mandatory abstention must be "timely."  *See* 28 U.S.C. § 1334(c)(2); *In re Trans World Airlines, Inc.*, 278 B.R. 42, 50 (Bankr. D. Del. 2002).  Further, courts in the Third Circuit have held that abstention is mandatory when the following elements are met: (i) the action is based on a state law claim or a state law cause of action; (ii) an action has already been commenced in state court; (iii) the action can be timely adjudicated in state court; (iv) there is no independent basis for federal jurisdiction which would have permitted the action to have been commenced in federal court absent bankruptcy; and (v) the matter before the court is non-core, such that it is related to a bankruptcy proceeding, but neither arises under title 11 nor in a case under title 11. *See Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006); *In re Maxus Energy Corp.*, 560 B.R. 111, 120 (Bankr. D. Del. 2016); *Trans World Airlines*, 278 B.R. at 50.  Here, the Pacific Life Claims satisfy all of the elements necessary for mandatory abstention.

### *First Element: The Motion Is Timely Filed*

34.    Considerations with respect to timeliness may include: (i) whether the movant moved as soon as possible after learning the grounds of the motion; (ii) whether the movant already involved the substantive process of the federal court on the matter going to the merits of the complaint, and whether the relief was sought after receiving an unfavorable ruling; and (iii) whether granting the motion would prejudice or delay the rights of others. *See In re Grace Community, Inc.*, 262 B.R. 625, 630 (Bankr. E.D. Pa. 2001) (finding that the debtor's remand and

abstention motion was timely filed when it was filed within 30 days after removal); *In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010) (finding that the motion was not timely because the party did not move for mandatory abstention until 4 months after she raised the relevant issue with the court).

35.     Here, the Motion is timely.  The Motion was brought as soon as possible after Pacific Life filed the Notice of Removal.  Marriott filed its Rule 9027(e)(3) Statement on March 3, 2021, which was within the 14-day time period set forth in Bankruptcy Rule 9027(e)(3), and Marriott subsequently filed this Motion twenty eight days after Pacific Life filed the Notice of Removal.  Further, this Court has not been involved in any substantive matter going to the merits of the Complaint.  Finally, granting the Motion will not prejudice or delay the rights of others parties in the bankruptcy.  The Pacific Life Claims are between two non-Debtors. Marriott is believed to be the largest unsecured creditor of the Debtor,[2] and there is no evidence that any other creditor will be harmed if the Court abstains from hearing the Pacific Life Claims, and remands such claims back to the Maryland State Court.

### *Second Element: The Claims Are Based on a State Law Cause of Action*

36.     The Pacific Life Claims are solely based on Maryland state law causes of action. The Pacific Life Claims consist of breaches of contract of the HMA and the SNDA, as well as tortious interference with a contract, based on Pacific Life's encouragement of the Debtor to breach its duty to fund Marriott's Working Capital requests.  *See* Complaint, at ¶¶ 119, 132.  There are no claims based on federal law.

---

[2] According to the Debtor's bankruptcy petition, it has only four unsecured creditors. *See* Voluntary Petition, p. 5 Del. Bankr. Court ECF No. 1.

### _Third Element_: An Action has Already Been Commenced in State Court

37.     When the claims at issue were already pending in state court at the time of the bankruptcy proceeding's petition date, mandatory abstention is appropriate.  *See Maxus*, 560 B.R. at 124; *see also In re Longview Power, LLC*, 516 B.R. 282, 295 (Bankr. D. Del. 2014) ("[A] state court proceeding must be pending prior to the commencement of the bankruptcy in order to warrant abstention"). The State Court Action was pending in the Maryland State Court at the time of the Petition Date, thus warranting mandatory abstention.

### _Fourth Element_: The Maryland State Court Can Timely Adjudicate the Issues

38.     In determining whether the timely adjudication requirement is met, the correct inquiry is not whether the action would be more quickly adjudicated in the bankruptcy court than in the state court, but rather, whether the action can be timely adjudicated in the state court. *See Trans World Airlines*, 278 B.R. at 51. Further, when a state action was commenced prior to a debtor's bankruptcy case and the issues of the state action involve state law, courts in the Third Circuit presume that the state court can decide the matter quicker than the bankruptcy court can. *See In re Sun Healthcare Group, Inc*., 267 B.R. 673, 677 (Bankr. D. Del. 2000) (finding that the state court proceeding could be timely adjudicated in the state court because of the presumption that the state court could decide the matter quicker than the bankruptcy court, and the party opposing abstention presented no evidence that the state court could not timely adjudicate the state court action). Here, Pacific Life has not offered any evidence that the Maryland State Court cannot operate timely and efficiently, and as such this Court must apply the presumption that the Maryland State Court is capable of timely adjudicating the Pacific Life Claims and will decide the matter quicker than this Court can.

- 14 -

39.     Moreover, that presumption is well founded in this case.  The Maryland State Court has already demonstrated that it can and will adjudicate the State Court Action in a timely fashion. The State Court Action was placed on a special Business & Technology Track before Judge Rubin. Judge Rubin acted swiftly on Marriott's motion for preliminary injunction, scheduling and holding a hearing within weeks of being appointed to the case.  He also set a scheduling conference to follow up an ensure the Pacific Life Claims were moving along, even after the Debtor filed its bankruptcy; only the fact of Pacific Life's removal stopped the parties from proceeding expeditiously in the Maryland State Court.

### _Fifth Element_: There Is No Independent Federal Jurisdictional Basis

40.     There is no independent federal jurisdictional basis for the Pacific Life Claims other than section 1334.  As set forth in the Complaint, Marriott is a Delaware corporation with its principal place of business in Maryland, the Debtor is a Delaware limited liability corporation with its principal place of business in Maryland, and Pacific Life is a Nebraska corporation with its principal place of business in California.  _See_ Complaint, at ¶¶ 8,10.  Thus, the requirements for federal diversity jurisdiction under 28 U.S.C. § 1332 are not met because there is not _complete_ diversity between the parties in the State Court Action as required for section 1332 since both Marriott and the Debtor are incorporated in Delaware.

41.     Even though the Pacific Life Claims only involve Marriott and Pacific Life, a diversity of citizenship analysis in the context of abstention and remand requires the Court to consider all parties to the underlying complaint, and must consider diversity at the time the underlying action is commenced.  _See_ 28 U.S.C. 1334(c)(2); _see also Maxus_, 597 B.R. at 244 (finding that diversity jurisdiction analysis for purposes of mandatory abstention must consider all parties to the underlying complaint, even if certain parties are not involved in the claim(s) that are

the subject of the motion remand and/or abstain, and it must consider diversity of citizenship at the time of commencement of the underlying proceeding); *St. Paul Fire and Marine Ins. Co. v. A.P.I., Inc.,* No. Civ. 05–139 PAMRLE, 2005 WL 679072, at *3  (D. Minn. Mar. 23 2005) (finding that when an entire state action is removed, and not just individual claims, complete diversity must exist amongst all of the parties to the state action).  Here, since the Debtor was involved in the State Court Action at the time it was commenced, the presence of the Debtor makes complete diversity impossible and therefore there is no independent jurisdictional basis for this Court to retain the Pacific Life Claims.

### *Sixth Element: The Claims Do Not "Arise In" or "Arise Under" the Bankruptcy Code*

42.     The adjudication of the Pacific Life Claims do not constitute a core proceeding as they do not "arise in" or "arise under" the Bankruptcy Code.  A claim or action does not "arise under" or "arise in" a case under the Bankruptcy Code if it is between non-debtor third parties, involves pre-petition obligations, and is based in state law. *See Stoe,* 436 F.3d at 218-19 (finding that a claim for unpaid severance payments was non-core because it involved pre-petition obligations between non-debtors and was a state law claim); *Halper v. Halper*, 164 F.3d 830, 838 (3d Cir. 1999) (finding that a claim for breach of a pre-petition contract between two non-debtors was not a core claim); *Trans World Airlines*, 278 B.R. at 49 (finding that claims were not core because the claims sounded in tort regarding pre-petition conduct, and a ruling on the claims depended on an interpretation of state law).

43.     Here, the Pacific Life Claims are between non-debtors, concern a contract entered into prior to the Debtor's bankruptcy filing, and any damages arising thereunder do not involve property of the estate.  Additionally, the Pacific Life Claims are substantively governed by D.C. state law, and thus were not created by the Bankruptcy Code nor will they be determined under

the provisions of the Bankruptcy Code.  Therefore, the Pacific Life Claims do not "arise in" or "arise under" the Bankruptcy Code, and thus do not constitute a core proceeding.

44.     In addition, section 157(b) lists proceedings that are defined as "core."  *See* 28 U.S.C. § 157(b).  While this list is not exhaustive, the Pacific Life Claims do not fall under any of the defined categories, and thus Pacific Life cannot rely on section 157(b) to argue that such claims are "core".

45.     In the Notice of Removal, Pacific Life asserts that the Pacific Life Claims "arise under" the Bankruptcy Code because these claims will have "significant and direct impact on the administration of the Debtor's estate, the bankruptcy proceedings and the liquidation of Debtor's assets."  *See* Notice of Removal, at ¶ 29.  Such assertions are both misguided and ignore the precedent in the Third Circuit, which states that claims, like the Pacific Life Claims, that, (i) are based on state law, (ii) are between non-debtor third parties, and (iii) involve pre-petition conduct or obligations, do not "arise under" the Bankruptcy Code.  Further, the Notice of Removal falsely states that the Rejection Order entered by the Delaware Bankruptcy Court required that claims arising under the HMA must be filed in the Delaware Bankruptcy Court. In fact, the Rejection Order solely dealt with claims *against the Debtor* and expressly preserved Marriott's claims against third parties (*i.e.* the Pacific Life Claims):

> Marriott must file claims *against the Debtor* in connection with the HMA or the rejection, breach or termination of the HMA in accordance with any claims bar date set by the Court, and the failure to file a timely claim shall forever prohibit Marriott from receiving any distribution on account of such claims from the Debtor's estate. For the avoidance of doubt, *any claims Marriott may have against third parties, including non-debtor affiliates, for damages related to the termination of the HMA, are expressly preserved*.

Rejection Order, at ¶ 4 (emphasis added).

46.     Pacific Life is also plainly incorrect in asserting that the Pacific Life Claims will have any impact on the administration of the Debtor's estate.  The HMA has already been rejected. Marriott's rejection damages claims against the Debtor will now proceed in the Delaware Bankruptcy Court.  The Pacific Life Claims are entirely separate.  Whether Pacific Life acted in derogation of its own, separate obligations to Marriott has no impact whatsoever on the availability or amount of Marriott's rejection damages claims against the Debtor.  Accordingly, the Pacific Life Claims are not core and cannot be heard by this Court or the Delaware Bankruptcy Court.

47.     Therefore, as each element of mandatory abstention is met, the Pacific Life Claims cannot be heard by this Court and must be remanded to the Maryland State Court.

**B.      Permissive Abstention and Equitable Remand Are Appropriate Pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b)**

48.     Even if mandatory abstention were not required with respect to the Pacific Life Claims, abstention and remand of the Pacific Life Claims is appropriate pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b).  Section 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).  Similarly, pursuant to section 1452(b), a Court may remand a claim or cause of action "on any equitable ground."  *See* 28 U.S.C. § 1452(b).  Courts have developed a list of factors to be considered when deciding to abstain under section 1334(c)(1) and these are identical to those relevant to equitable remand. *See In re Federal-Mogul Global, Inc.*, 282 B.R. 30, 314 (Bankr. D. Del. 2002); *see also In re Glunk*, No. 06–373, 2006 WL 6659552, at *6 (Bankr. E.D. Pa. Aug. 18, 2006) ("[A] request for discretionary abstention presents the same considerations as the request for equitable remand").  Abstention under section 1334(c)(1) that is made in the

interest of justice, or in the interest of comity with state courts or respect for state law falls under the "any equitable ground" provision of section 1452(b). *See Allied Signal Recovery Trust v. Allied Signal, Inc.,* 298 F.3d 263, 269 (3d Cir. 2002).

42.    Courts in the Third Circuit employ the following factors when analyzing motions under section 1334(c)(1): (1) efficiency in the administration of the debtor's estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court; (4) the presence of a related proceeding commenced in state court; (5) the existence of a jurisdictional basis other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court; (9) the burden of the federal court's docket; (10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) whether non-debtor parties are involved in the proceeding. *See Maxus,* 560 B.R. at 124-25. Permissive abstention is not formulaic and involves an equitable consideration of the circumstances and weighing of the factors. *Maxus*, 597 B.R. at 247. Here, an equitable consideration of the circumstances and application of these factors strongly supports this Court's abstention from hearing the Pacific Life Claims.

### *First Factor: Efficiency in the Administration of the Debtor's Estate*

49.    The Pacific Life Claims are not claims against the estate and are not capable of being adjudicated by a bankruptcy court due to the nature of the claims and Marriott's right to a jury trial. Therefore, this Court retaining the Pacific Life Claims will not make the Debtor's bankruptcy case more efficient. Further, when claims have a weak nexus to the bankruptcy case,

allowing the claims to be litigated in state court will not disrupt the efficient administration of the debtor's estate. *See Trans World Airlines*, 278 B.R. at 52. Moreover, although the Notice of Removal does not reference any right of indemnification by Pacific Life against the Debtor arising from Pacific Life's liability to Marriott, even if such right existed, courts will still abstain and remand a claim to be liquidated in state court. *See, e.g.*, *Maxus,* 560 B.R at 125 (finding that although the resolution of state action claims would ultimately affect the size of any indemnification claim a third party may have had against the debtor, an enhanced distribution in the bankruptcy case is not sufficient to oppose remand). Therefore, if the Pacific Life Claims are litigated in the Maryland State Court, and the Maryland State Court adjudicates the Pacific Life Claims, it will neither delay ongoing administration of nor affect the efficient administration of the bankruptcy case.

### *Second Factor: The Extent to Which State Law Issues Predominate over Bankruptcy Issues*

50.     The Pacific Life Claims are solely based in state law, and do not raise any bankruptcy issues or law. *See Maxus,* 560 B.R. at 126 (finding that this factor weighed in favor of abstention when the subject claims did not invoke any bankruptcy issues). Thus, this factor weighs in favor of abstention.

### *Third Factor: Whether the Issues Involve Difficult or Unsettled Questions of State Law That Would Be Better Addressed by a State Court*

51.     Courts have held that remand is appropriate when the state court is familiar with the litigants and other contentious aspects of drawn out litigation. *See id*. Here, the Maryland State Court is quite familiar with the litigants and the contentious aspects of the Pacific Life Claims since it has already heard and analyzed the factual record of this case, and it has already issued two written opinions, which appear to have been the basis for Pacific Life funding the Debtor's

bankruptcy and the removal of the State Court Action. Further, when the underlying issues of a claim do not abound in bankruptcy, and as such are not in the bankruptcy court's "wheelhouse", this factor weighs in favor of abstention. *See Maxus*, 597 B.R. at 248. The Pacific Life Claims do not exist in bankruptcy law, and are thus not in this Court's wheelhouse. On the other hand, the Pacific Life Claims are well within the knowledge of the Maryland State Court, and the Maryland State Court has the expertise to decide the issues. Therefore, the Maryland State Court is best suited to hear and adjudicate the Pacific Life Claims and this factor favors abstention.

### *Fourth Factor: The Presence of a Related Proceeding Commenced in State Court*

52.     Courts in the Third Circuit have found that this factor contributes to a necessary and appropriate finding of abstention when a similar proceeding has already been commenced in state court. *See Trans World Airlines*, 278 B.R. at 52. Here, the Pacific Life Claims were pending in the Maryland State Court prior to the Petition Date, as well as the Notice of Removal being filed. Thus, this factor contributes to a necessary and appropriate finding of abstention.

### *Fifth Factor: The Existence of a Jurisdictional Basis Other Than Section 1334*

53.     As noted above, there is no federal jurisdictional basis for the State Court Action independent of 28 U.S.C. § 1334.

### *Sixth Factor: The Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case*

54.     Courts in the Third Circuit have found that matters that affect the interpretation, implementation, consummation, execution, or administration of a confirmed plan will typically have the requisite close nexus to the bankruptcy case. *See Maxus*, 597 B.R. at 248. Here, there is no evidence that the Pacific Life Claims would have any effect on the interpretation, implementation, consummation, execution, or administration of a confirmed plan in the Debtor's Bankruptcy Case. Moreover, courts in the Third Circuit look at whether a successful prosecution

of the claims will result in an enhanced distribution for creditors in the bankruptcy case.  *See In re LaRoche Indus., Inc.*, 312 B.R. 249, 254 (Bankr. D. Del. 2004).  The Pacific Life Claims are between two non-debtors, and thus a successful prosecution of these claims will not enhance distribution for creditors because any damages related to the Pacific Life Claims will not come from the Debtor or its estate.  As such, the Pacific Life Claims' tenuous connection to the Bankruptcy Case supports abstention of these claims.

### *Seventh Factor: The Substance Rather than Form of an Asserted "Core" Proceeding*

55.  In the Notice of Removal, Pacific Life argues that the claims against the Debtor and the Pacific Life Claims are, together, core claims; however, Pacific Life does not adequately explain how the Pacific Life Claims constitute core claims.  *See* Notice of Removal, at ¶¶ 29-30. As set forth above, unlike the claims by and against the Debtor, the Pacific Life Claims are not core claims.  Further, in the Notice of Removal, Pacific Life alleges that jurisdiction is appropriate in this Court because "each and every claim, cause of action and counterclaim asserted . . . relates to chapter 11 of the Bankruptcy Code".  *See* Notice of Removal, at ¶ 27.  As discussed below, that is simply not true as to the Pacific Life Claims, which can be severed from the claims by and against the Debtor.  Accordingly, this factor favors abstention.

### *Eighth Factor: The Feasibility of Severing State Law Claims from Core Bankruptcy Matters to Allow Judgments to be Entered in State Court*

56.  As noted above, the Pacific Life Claims are all state law-based causes of action. While Marriott may have claims against the Debtor relating to the HMA which will be decided in Delaware Bankruptcy Court, the Pacific Life Claims do not relate to core bankruptcy matters. There is no bankruptcy issue to sever from the Pacific Life Claims since they are entirely state law claims.  *See Maxus*, 560 B.R. at 127 (finding that non-core claims based in state law between non-debtors could be severed from the core bankruptcy matters that involved the debtor).

### Ninth Factor: The Burden of the Federal Court's Docket

57.     This factor weighs in favor of abstention because of this Court's heavy docket.  For example, the Delaware Bankruptcy Court has some of the highest filing statistics in this United States, which would slow the adjudication of the Pacific Life Claims.  *See* United States Courts, Caseload Statistics Data Tables, U.S. Bankruptcy Courts—Bankruptcy Cases Commenced, Terminated and Pending During the 12- Month Periods Ending September 30, 2019 and 2020, Table F (Sept. 30, 2020).[3]  While the Maryland State Court has a significant case load, it has superior knowledge of the facts at issue and has already adjudicated two early disputes between the parties with written opinions.  Furthermore, because this case was transferred to the Business & Technology Track, it will proceed expeditiously in that specialized forum.  Therefore, if the matter was remanded, the Maryland State Court could more efficiently adjudicate the remaining issues.  Further, because the Pacific Life Claims would be entitled to a jury trial, the matter would need to be transferred to a federal district court and thus this Court cannot fully adjudicate the Pacific Life Claims.

### Tenth Factor: The Likelihood That the Commencement of the Proceeding in Federal Court Involves Forum Shopping by One of the Parties

58.     The use of the Bankruptcy Code to obtain a favorable forum should not be encouraged, and when there are no questions of bankruptcy law present and no independent basis for federal jurisdiction, forum shopping is present.  *See McCorkle v. Herold*, No. 3:18-MC-00004, 2018 WL 2470731, at *3 (W.D. W. Va. May, 31, 2018).  Further, courts look at the timing and nature of a removed case to determine whether there was any forum shopping. *See Nassau Dev. of Vill. W. Corp. v. Jarrette Bay Inv. Corp. (In re Nassau Dev. of Vill. W. Corp.)*, 547 B.R. 857, 862 (Bankr. S.D. Fla. 2016); *see also Maxus*, 560 B.R. at 128 (finding that, to the extent that a party's

---

[3] Available at https://www.uscourts.gov/sites/default/files/data_tables/jb_f_0930.2020.pdf.

request for the bankruptcy court to take jurisdiction over state law claims was based upon an attempt to "appeal" a decision made by the state court, such an action would constitute inappropriate forum shopping).

59.     Here, there are considerable indications of forum shopping by Pacific Life regarding the Pacific Life Claims as there are no questions of bankruptcy law present in the those claims and no independent basis for federal jurisdiction.  Moreover, the timing of the Notice of Removal suggests forum shopping because the Maryland State Court has, in recent months, issued two written opinions in Marriott's favor.  The Notice of Removal is transparently Pacific Life's effort to "appeal" the written opinions of the Maryland State Court, and to seek out a more favorable judge who has less understanding of how Marriott has been injured.  By removing the Pacific Life Claims to this Court, Pacific Life is unfairly taking advantage of the Bankruptcy Code to obtain a favorable forum in the Delaware Bankruptcy Court because the Maryland State Court has demonstrated that it understands Marriott has suffered irreparable harm.  Such blatant forum shopping should not be condoned.

### *Eleventh Factor: The Existence of a Right to a Jury Trial*

60.     A bankruptcy court cannot conduct a jury trial in a non-core proceeding. *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990).  The Pacific Life Claims are for breach of contract and tortious interference with a contract, and such claims require a jury trial.  *See Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 411 (3d Cir. 1995) ("[T]he right to a jury trial is protected by the Seventh Amendment when the claim is a legal one"); *see also Davis v. Merv Griffin Co.*, 128 B.R. 78, 101 (D. N.J. 1991) ("[I]t is clear that [the] state law claims for breach of contract, tortious interference with contract rights . . . are legal in nature, and thus [the party] is entitled to a jury trial as a matter of right").  Given that this Court cannot conduct a jury trial with respect to

the Pacific Life Claims, it is a considerably more efficient use of judicial resources to remand those claims to the Maryland State Court where a jury trial can be fairly and expeditiously conducted. If this Court retains the Pacific Life Claims, Marriott would still be entitled to a jury trial for the Pacific Life Claims and this can only be adjudicated by the District Court, which has no experience with this particular dispute, particularly as compared to the Maryland State Court.

### *Twelfth Factor: Whether Non-Debtor Parties Are Involved in the Proceeding*

61.     When non-debtor parties are involved in a subject proceeding, this factor favors abstention. *See In re Am. Home Mortg. Holdings, Inc*., 390 B.R. 120, 139 (Bankr. D. Del. 2008) (finding that this factor favored abstention when three of the four litigants involved in the relevant proceeding were non-debtors); *see also LaRoche,* 312 B.R. at 255 (finding that this factor favored abstention when one party in the action was a non-debtor, and the other was a debtor). In the entire State Court Action, two of the three litigants are non-debtors, and with regards to the Pacific Life Claims, all of the involved parties are non-debtors. Thus, this factor weighs in favor of abstention.

### *Additional Factors Under 28 U.S.C. § 1452(b)*

62.     In addition to the above factors, courts in the Third Circuit consider additional factors including the economic use of judicial resources, and the possibility of inconsistent results for relief under section 1452(b). *See Lone Star Indus., Inc. v. Liberty Mut. Ins.,* 131 B.R. 269, 273 (D. Del. 1991); *Indian River Homes, Inc. v. Young, Conaway, Stargatt & Taylor*, Nos. 91–233–CMW, 91–261–CMW, 1991 WL 171267, at *2  (D. Del. Aug. 14, 1991). These factors weigh in favor of remanding the Pacific Life Claims to the Maryland State Court.

63.     First, retention of federal bankruptcy jurisdiction for a state law action detracts from the economic use of judicial resources, and imposes an unnecessary burden on a bankruptcy court by requiring the bankruptcy court to expend time and resources on a state law action that could

otherwise be spent administering the estate.  *See Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co*., 130 B.R. 405, 408 (S.D.N.Y. 1991).  Removal of the Pacific Life Claims to this Court imposes an additional burden on this Court by requiring it to expend significant time and resources resolving claims based on solely on state law between two non-debtors, rather than focusing on administering the estate.  As such, remanding the Pacific Life Claims to the Maryland State Court would promote the economic use of judicial resources in this Court by allowing it to efficiently administer the Debtor's estate, rather than deal with tangential state law claims against a non-debtor.

64.     Second, there is little possibility of inconsistent results by remanding the Pacific Life Claims to the Maryland State Court.  In the Notice of Removal, Pacific Life argues that issues related to the tortious interference with a contract claim against Pacific Life would be "subject to inconsistent determinations unless they are decided a single time in the Delaware Bankruptcy Court."  *See* Notice of Removal, at ¶ 22.  However, contrary to Pacific Life's statement, the Pacific Life Claims are not the same as the claims against the Debtor, and the Debtor is not a necessary party to the Pacific Life Claims.  Indeed, tortious interference with contract claims are frequently litigated solely against the party who tortuously interfered, without joining all of the parties to that contract.  *See Alpha Pro Tech, Inc. v. VWR Int'l. LLC*, 984 F. Supp. 2d 425, 460 (E.D. Pa. 2013) (finding that, in a lawsuit involving a tortious interference with a contract claim, all parties to the underlying contract were not necessary parties, and did not need to be joined); *Citrus Grp., Inc. v. Key Impact Sales and Sys., Inc.,* No. MJG-06-CV-11, 2006 WL 8456725, at *3 (D. Md. Aug. 3, 2006) ("[T]here is no rule that you cannot sue the interferer without also suing the party to your contract whom the defendant inveigled into breaking the contract"); *Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 880 (7th Cir. 2004) (holding that in a

case for tortious interference with a contract, "there is no rule that you cannot sue the interferer without also suing the party to your contract whom the defendant inveigled into breaking the contract.") (citing *Arkansas v. Texas*, 346 U.S. 368, 369-70 (1953)) (other citations omitted); *see generally* 7 Wright, Miller & Kane, *Fed. Prac. & Proc.: Civil 3d* § 1613 (1998) ("[I]n an action to enjoin interference with a contract, the party prevented from performing the agreement need not be joined since that party's interests are not directly at stake and effective relief can be awarded without him.  However, the party accused of interfering with the contract must be joined since the presence of the interfering party normally is essential to halting the offending conduct.") (footnotes omitted).

65.     Accordingly, as set forth above, the factors governing permissive abstention and remand clearly favor this Court abstaining and remanding the Pacific Life Claims to the Maryland State Court.

## **RESERVATION OF RIGHTS**

66.     Marriott reserves the right to amend, modify, or supplement this Motion in all respects.  Nothing herein constitutes a waiver of Marriott's rights or remedies.

**WHEREFORE**, for the reasons discussed above Marriott respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and necessary.

Dated: March 19, 2021

Respectfully submitted,

By:  /s/ Colleen Coffman Correal

Colleen Coffman Correal
Ethridge, Quinn, Kemp, Rowan & Hartinger
33 Wood Ln.
Rockville, MD 20850
Telephone: 301-762-1696
ccc@eqlawyers.com

Lindsay Harrison
Jenner & Block LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Tel. 202-639-6000
Fax: 202-639-6066
lharrison@jenner.com

Paul Rietema
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
Tel: 312-222-9350
prietema@jenner.com

Alex S. Trepp
Jenner & Block LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Tel: 202-639-6000
Fax: 303-639-6066
atrepp@jenner.com

*Attorneys for Marriott Hotel Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 19th day of March, 2021, a copy of the foregoing was

emailed and mailed first class to:

    J. Stephen McAuliffe III
    Rosalyn Tang
    Miles & Stockbridge P.C.
    11 North Washington Street, Suite 700
    Rockville, Maryland 20850
    Telephone: (301) 762-1600
    smcauliffe@milesstockbridge.com
    rtang@milesstockbridge.com

    Todd E. Soloway
    Bryan T. Mohler
    PRYOR CASHMAN LLP
    7 Times Square
    New York, New York 10036
    Tel 212-421-4100
    Fax 212-798-6907
    tsoloway@pryorcashman.com
    bmohler@pryorcashman.com

    Grant T. Stein
    David A. Wender
    Brian D. Frey
    ALSTON & BIRD LLP
    1201 West Peachtree Street
    One Atlantic Center
    Atlanta, Georgia 30309-3424
    Tel 404-881-7354
    Fax 404-253-8563
    Grant.stein@alston.com
    david.wender@alston.com

                /s/ Colleen Coffman Correal
                Colleen Coffman Correal